542 SCHOMMER *v.* FARWELL *et al.* [Sept. T.,

Opinion of the Court. Syllabus.

---

## LEONARD SCHOMMER

*v.*

## JOHN V. FARWELL *et al.*

1. CONTRACTS — DURESS. A person prosecuting another upon a charge of crime, may receive from the accused private satisfaction for his private injury, and the fact that he receives this while the prisoner is in confinement, and forbears further prosecution, does not, of itself, render the transaction illegal.

2. But even if the imprisonment be lawful, yet if the prosecutor detain the prisoner in prison unlawfully, by covin with the jailor, this is a duress which will avoid a deed.

Appeal from the Superior Court of Chicago; the Hon. John A. Jameson, Judge, presiding.

The opinion states the case.

Messrs. Spafford & McDaid, for the appellant.

Messrs. Hitchcock, Dupee & Evarts, for the appellees.

Mr. Justice Lawrence delivered the opinion of the Court:

This was a bill in chancery, filed by Leonard Schommer against John V. and Charles B. Farwell, to set aside a mortgage given by complainant to them under the following circumstances: It appears the Farwells employed a son of Schommer, a youth of sixteen, to keep an account of the loads of sand taken from a piece of land near Chicago, belonging to them, and to collect the money for each load. They became suspicious that the boy was defrauding them by not making honest returns, and gave the matter in charge to one Keefe, a professional detective, in the employment of the Farwells. He investigated the matter, and becoming satisfied the boy was practicing a fraud, and doubtless supposing his father was privy to it, procured a warrant from a magistrate and had the father arrested.

The arrest was made in the evening, about the last of October, 1867. Schommer was at once taken to jail, and placed in a cell without fire or a bed, where, as he testifies, he suffered greatly from cold during the night, being at the time in feeble health. In the morning he was taken from the cell up stairs, where he was confronted with Keefe, who charged him with being engaged, with his boy, in embezzling the money for the sand to a large amount, and, according to Keefe's own testi-

544      Schommer. *v.* Farwell *et al.*     [Sept. T.

Opinion of the Court.

mony, offered to have the prosecution stopped if Schommer would pay over the money. Schommer denied the charge and Keefe went away. Schommer was put back in the cell. About noon Keefe appeared again at the police station, and Schommer was again brought from his cell to meet him. Another conversation ensued, the result of which was that Schommer agreed to pay the Farwells $300 in money, and give a mortgage on his property, for $900, if he could be released. An officer was then sent with him to his house, and, the money having been paid and the mortgage executed, he was released from custody. Keefe testifies Schommer, in the second conversation, admitted the embezzlement by him of $1,200, and that he owed the Farwells that amount. The bill, in this case, is filed for the purpose of canceling the mortgage, and recovering back the money paid.

It is quite true, as urged by counsel for appellees, that a person prosecuting upon a charge of crime may receive private satisfaction for his private injury, and the fact that he receives this while the prisoner is in confinement, and forbears further prosecution, does not, of itself, render the transaction illegal. This was so held in *Taylor* v. *Cottrell*, 16 Ill. 93. But as was said by Parsons, C. J., in *Watkins* v. *Baird*, 6 Mass. 506, even if the imprisonment is lawful, yet if the prosecutor detain the prisoner in prison unlawfully, by covin with the jailor, this is a duress which will avoid a deed. There can be no doubt of the correctness of this principle, and it is applicable to the case at bar. Schommer swears he was told, while in confinement, that he could have neither lawyer nor trial, but must pay his debts. His testimony is, of course, to be received with caution, but Keefe himself testifies Schommer said he wanted to be tried, and was willing to go down and have his trial. There is no pretense that his examination before the magistrate who issued the warrant was delayed for the purpose of procuring testimony. Keefe himself was the witness on whose evidence the prosecution would have rested. When, therefore, Schommer demanded to be taken before the magistrate he should

have been taken there. Instead of this the jailor, after the first ineffectual interview between Schommer and Keefe, recommits Schommer to his cell until Keefe again appears, and Schommer, under the apprehension of further incarceration, accedes to Keefe's demands. He is then discharged without having been taken before the magistrate who issued the warrant at all.

It is evident that the sole purpose of Keefe in this prosecution was, by the agencies of the criminal law, to secure what he believed to be a debt due to his employers. The police officers seem to have paid no attention to the command of the magistrate's warrant, or to the rights of the prisoner, but to have used their official power merely in obedience to the wishes of Keefe, and to enable him to accomplish his private purpose. We presume Keefe believed Schommer's son had been guilty of embezzlement, and that the father was privy to it, but this did not justify him in prolonging the imprisonment of Schommer a single hour, merely for the purpose of compelling the execution of this mortgage, and if it was executed by Schommer as the only means of speedily terminating his confinement, and after being refused a hearing before the magistrate, then it was executed under duress and is void. That it was so executed is fairly to be inferred from the testimony.

The majority of the court are of opinion the complainant is entitled to have the mortgage canceled and the money paid refunded, with interest, and the Superior Court will make a decree to this effect. The decree is reversed and the cause remanded.

*Decree reversed.*