ISRAEL G. HEAPS

*v.*

CHARLES DUNHAM *et al.*

*Filed at Ottawa May 18, 1880—Rehearing denied September 13, 1880.*

1. CONSPIRACY—*defined.* A conspiracy may be regarded, a combination of two or more persons, by a concerted action, to accomplish a criminal or unlawful purpose, or a purpose not in itself criminal by unlawful or criminal means.

2. Where a person, arrested upon a charge of bastardy, makes a settlement in respect thereto, giving his notes for an amount agreed upon with the persons managing the prosecution, if the persons who instituted and were prosecuting the suit in behalf of the woman interested, honestly believed

95   583
122  213
95   583
63a   66
95   583
70a   41
95   583
83a  395
95   583
85a  333

from her statements that the charge was true, and were thereby induced to act in the matter, they could not properly be charged with conspiring to extort money from the accused unlawfully, even though as a matter of fact the person so charged was not guilty of the offence.

3. DURESS—*what constitutes—in avoidance of a contract.* It is not enough to establish duress, that a party was imprisoned at the time of making a promise or executing a contract in respect to the subject concerning which he had been arrested. Imprisonment, when lawful, is by no legal intendment an abridgement of the free and voluntary volition of the mind in the management of business transactions. To put the party under duress, the imprisonment must be unlawful, or there must be an abuse of or an oppression under lawful process or legal detention.

4. So, where a person had been arrested upon a charge of bastardy, under a warrant regularly issued, and while under arrest but not actually in prison, or even under such restraint as would prevent him from going where he pleased, he executed his promissory notes in settlement of the subject matter of the charge, it was *held*, the party was under no such duress as would enable him to avoid the contract.

5. CONSIDERATION—*agreement not to prosecute for a crime.* A promissory note given in settlement of a crime is without consideration, and can not, while it remains in the hands of the payee, be enforced in a court of law or equity.

6. CONTRACT—*in settlement of bastardy.* It is competent for a person charged with bastardy to compromise the matter with the woman alleged to have become pregnant, and if the party so charged, upon being arrested under a warrant issued in such proceeding, shall enter upon a settlement, not induced by fraud or oppression, and shall give his promissory note for a sum of money for the benefit of the alleged injured party, such settlement will be conclusive upon the person charged, in respect to the question whether the woman was, in fact, pregnant or not.

7. CONSIDERATION—*compromise of doubtful claim.* In order to render an agreement to forbear, and the forbearance of a claim, a sufficient consideration for a promise to pay money, it is essential that such claim shall be sustainable, at law or in equity, in favor of the person to whom or for whose benefit the promise is made.

8. SAME—*settlement of threatened prosecution for seduction.* The right of action for the seduction of a female in her minority is in the parent, who is entitled to her services. So, a promise to pay money on the agreement of the female herself to forbear in respect to a threatened prosecution for her alleged seduction is without consideration.

APPEAL from the Appellate Court for the Second District; —heard in that court on appeal from the Circuit Court of Henry County; the Hon. GEORGE W. PLEASANTS, Judge, presiding.

Mr. GEORGE W. SHAW, Mr. LEVI NORTH, and Mr. C. C. WILSON, for the appellant.

Mr. E. C. MODERWELL, Mr. M. SHALLENBERGER, and Mr. THOMAS E. MILCHRIST, for the appellees.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by Israel G. Heaps, in the circuit court of Henry county, against Charles Dunham, Levi Waterman, O. L. Newell, William C. Smith, Rachael Smith, Lavina Snell and John Sittler, to enjoin the sale and collection of certain notes which had been given by the complainant to Levi Waterman in settlement of a prosecution instituted against the complainant by Lavina Snell before a justice of the peace for bastardy, and, as is alleged, in settlement of a threatened prosecution for seduction and rape. The bill also prays that certain moneys which had been paid under and by virtue of the settlement, be refunded.

It appears from the evidence introduced on the hearing that on the 17th day of April, 1876, Lavina Snell, an unmarried woman, made complaint in writing, under oath, before one O. W. Newell, a justice of the peace of Henry county, in which it was charged that she was pregnant with a child, and that Israel G. Heaps was the father. A warrant was issued by the justice, and on the 18th day of the same month Heaps was arrested and taken before the justice to answer the charge preferred against him.

It also appears that the prosecution was represented by Charles Dunham, a lawyer, who appeared before the justice, while the defendant appeared without counsel. The defendant, as appears, was not put upon trial, but the most of the day after he arrived before the justice was consumed in nego-

tiations between him and Mr. Dunham in reference to a settlement. During this interview he was informed that unless a settlement was made he would be prosecuted for rape and seduction, in addition to the charge of bastardy then pending. A settlement was finally made, by which Heaps agreed to pay $1050, as follows: $250 cash, which was paid to Dunham a few days after the arrangement, $200 was to be paid in six months, $200 in twelve, $200 in eighteen, and $200 in twenty-four months, for which Heaps executed his four promissory notes secured by a chattel mortgage, the notes being payable to Levi Waterman.

The substance of the charge contained in the bill is, that the defendants, Lavina Snell, Rachael Smith, William C. Smith, O. W. Newell and Charles Dunham, entered into a conspiracy to falsely charge complainant with bastardy, rape and seduction, for the purpose of extorting money from him, and that while he was under arrest the notes were fraudulently obtained from him in settlement of the three offences of which he was charged, in consequence whereof the notes are without consideration and void.

We have given the evidence in this case a careful examination, and in our judgment it fails to establish a conspiracy on the part of the defendants to extort money. A conspiracy may be regarded a combination of two persons or more, by a concerted action, to accomplish a criminal or unlawful purpose, or a purpose not in itself criminal, by unlawful or criminal means. *Smith* v. *The People*, 25 Ill. 17.

Dunham was employed as an attorney by Wm. C. Smith, who was stepfather of the prosecuting witness, to institute proceedings against the complainant. He seems to have acted in good faith. Before commencing the prosecution for bastardy, he took the precaution, after he was employed, to call upon the prosecuting witness in person and learn from her the facts in the case, whose statements to him, if true, were a sufficient warrant for his action in the case, and, so far as

appears, he had no reason whatever to doubt the truth of her statements to him.

In regard to the conduct of Newell, the justice,—he seems to have taken no part in the matter outside of his official duty, except that at the request of Smith, he wrote a letter to Dunham, and went with Smith to Dunham's office at the time he was employed. After complainant was arrested and brought to Newell's office, he took no part whatever in the negotiations which led to the settlement, but, on the other hand, he left the office and went into the country to visit a patient and did not return until about noon. After dinner he again went to the country and did not finally return until the settlement was consummated between Dunham and complainant.

In regard to Smith,—he employed Dunham to prosecute the case, and agreed upon the amount that should be paid him for his services, but he had no conversation or negotiation whatever with complainant, nor does it appear that he was to receive any part of the money complainant agreed to pay.

Rebecca Smith, the mother of the prosecuting witness, had no connection with the transaction, and, so far as is shown by the evidence, she was to receive no part of the money agreed to be paid in the settlement.

In regard to the prosecuting witness Lavina Snell,—she had no knowledge in regard to the amount that was to be paid or the terms and conditions of the settlement until after it was completed. It nowhere appears that she took any part in the negotiations which led to the settlement, but the whole matter was managed by her stepfather, Smith, and Mr. Dunham who was employed by him. There is, therefore, no sufficient evidence in the record from which the conclusion can be reached that the defendants conspired together to extort money from complainant. The complainant may have been innocent of the charge of bastardy, seduction or rape, and yet, if the prosecuting witness informed Smith and Dunham that he was guilty, and they honestly believed the truth of her statements,

and under such circumstances instituted the prosecution for bastardy which led to the settlement, there would be no ground for holding that the defendants were actuated by fraud or had formed a conspiracy which had for its object the extortion of money from complainant. There is an entire absence of proof to establish a combination, by concert of action, to accomplish an unlawful purpose.

Nor will the facts and circumstances under which the notes were executed warrant the belief that complainant was under such duress as would avoid the contract made.

After the warrant was served on complainant, the constable made a return thereon and left the office of the justice. Complainant was in no manner restrained of his liberty. As a matter of fact, he was not prevented from going when or where he might choose. But if the complainant might be regarded as in the legal custody of the officer who arrested him, and thus technically imprisoned, as the arrest was lawful, having been made under a warrant in all respects regular, the imprisonment would not constitute duress. Imprisonment, when lawful, is by no legal intendment an abridgement of the free and voluntary volition of the mind in the management of business transactions. It is, therefore, not sufficient to establish duress to show an imprisonment. It is necessary to show an unlawful imprisonment, or abuse of, or oppression under lawful process or legal detention. *Taylor* v. *Calhell,* 16 Ill. 93.

No reason is perceived why a person may not receive from one guilty of a private injury, satisfaction for such injury, and the fact that this is received while the person may be in confinement does not render the transaction illegal. *Schommer* v. *Farwell,* 56 Ill. 542.

Here, the complainant was arrested on a lawful warrant, issued by a justice of the peace, on proper affidavit. No oppression or unlawful means was resorted to for the purpose of inducing a compromise, but on the other hand, complainant was left to the free exercise of his own volition, and when a

settlement of a charge of bastardy and alleged seduction has been made under such circumstances the settlement can not be avoided under a plea of duress.

But it is, however, contended that the money was paid and the notes given, in part, in settlement of an alleged crime—a rape—and hence the whole transaction is void. It is well settled that a note given in settlement of a crime is without consideration, and can not, while it remains in the hands of the payee, be enforced in a court of law or equity, and if the consideration of the notes executed by the complainant was an agreement that he should not be prosecuted for rape, the notes are without consideration, and their payment might properly be enjoined while they remain in the hands of the parties to whom they were given.

The record contains evidence that the notes were executed in part consideration that the complainant should not be prosecuted for an alleged rape, but the decided weight of evidence is that the only consideration of the notes was the settlement of the prosecution for bastardy and a threatened prosecution for seduction.

Dunham testified: " I told Heaps that they talked to me about charging him with rape, and that that could not be settled or compromised; I told him that the rape could not be taken into account in any settlement that was made."

The complainant, in his evidence, it is true, thinks the whole matter was settled, including the charge of rape, but at the same time he admits that Dunham told him the charge of rape could not be settled—that it would be compounding a felony.

The evidence of Dunham seems to be corroborated by the fact that on the completion of the settlement Smith gave complainant a bond of indemnity which shows only a settlement of the charge of bastardy and seduction.

We are, therefore, satisfied that, while it may have been the understanding of the complainant that the charge of rape

entered into the settlement, yet we do not think that the evidence, when it is all considered, will bear that construction.

There is, however, one branch of this case which is not free from difficulty. It is no doubt true, as Lavina Snell testified, that complainant had connection with her, although he denied it in his evidence, but there is much doubt, from the evidence, whether she was pregnant or not. It is claimed that she miscarried on the 19th day of April, 1876, the next day after the settlement was made. If she was pregnant at all she was only in that condition about two months, as she testified that her last menstruation occurred on February 3, 1876, and after that time she had connection with complainant, and, as she thinks, became pregnant. Had she submitted to a medical examination whether she was pregnant or not, it probably might have been ascertained with certainty, but no such examination was had, and the fact rests upon mere conjecture. Dr. Newell testified that he attended the girl fourteen days from and including April 19th, but from his evidence it is by no means certain that she miscarried. The members of the family testify to her sickness and confinement to her room for about three weeks, but this is met by the testimony of a number of witnesses who were at and near the house during the time, who testify that they saw Lavina in the yard and about the house at work as usual.

But while there is great doubt from the evidence whether Lavina Snell was pregnant, yet so far as the charge of bastardy is concerned, as complainant voluntarily settled and gave his notes in settlement of the prosecution which had been commenced against him, he must be concluded by that settlement. When arrested on the charge he had the right to contest the case and require strict proof to sustain the charge, but under our statute a charge of this character may be settled between the prosecuting witness and defendant, and when a settlement has been made without fraud or oppression, we think it should be conclusive and binding between the parties. The complainant, however, gave his notes for $1050,

of which $550 was in discharge of the prosecution for bastardy, and the balance of $500 in settlement of a threatened prosecution for seduction. The whole amount, $1050, as shown by the pleadings and evidence, was for the prosecuting witness, Lavina Snell. Smith and his wife in their answers disclaim any interest whatever in the amount agreed to be paid, and Dunham testifies that the whole amount of the notes were held for and on behalf of Lavina Snell.

The question then arises whether, as to the $500 agreed to be paid Lavina Snell for seduction, she at the time being a minor only sixteen years old, there is a sufficient consideration to support the notes. It is clear that she had no cause of action against complainant for seduction. If any right of action existed it was in favor of the mother (the father being dead.) The mother alone was entitled to the services of the daughter, the loss of which is the legal foundation for the action. *Grable* v. *Margrave,* 3 Scam. 372. The question then arises whether the bare assertion of a right to recover for seduction on the part of Lavina Snell, when no legal right whatever existed, is a sufficient consideration to support the notes executed by complainant as to the $500.

In 1 Parsons on Contracts, page 437, the author says: "As the consideration must have some value and reality, the assumption of a supposed danger or liability which has no foundation in law or in fact is not a valuable or sufficient consideration, nor is the performance of that which the party was under a previous legal obligation to do; and where one, through mistake of the law, acknowledges himself under an obligation which the law does not impose, he is not bound by such a promise, although, in general, ignorance of the law is no excuse or defence, for if it were, a premium would be held out to ignorance."

In Chitty on Contracts, page 35, it is said: "In order to render the agreement to forbear and the forbearance of a claim a sufficient consideration, it is essential that such claim should be sustainable at law or in equity; the consideration

fails if it appear that the demand was utterly without foundation, though the giving up of a doubtful claim will suffice."

In *Mulholland* v. *Bartlett*, 74 Ill. 58, after a review of the authorities on the question, it is said: "The result of the authorities, as we are inclined to think, is to make forbearance a good consideration. There must be a well founded claim in law or equity forborne, or there must be a compromise of a doubtful right." See also, *Gould* v. *Armstrong*, 2 Hall, 266.

Here, Lavina Snell threatened complainant with a prosecution for seduction. The law gave her no right of action,— so far as she was concerned, she had no claim for damages against him. There was no legal right to settle, or doubtful claim to compromise. Doubtless, to avoid scandal and the disgrace which would fall upon himself and family arising from a prosecution at the suit of a woman, he submitted to her proposition and executed the notes. But, however that may have been, we are of opinion that, as to the sum of $500 for which the notes were originally given to settle the threatened suit for seduction, there was no consideration, and to that extent the notes should be enjoined.

The judgment of the Appellate Court will be reversed, and the cause remanded for further proceedings consistent with this opinion.

*Judgment reversed.*