# CASES

# APPELLATE COURTS OF ILLINOIS

FOURTH DISTRICT—AUGUST TERM, 1895.

## Loan and Protection Association of Patoka v. Nathaniel W. Holland.

1. BUILDING AND LOAN ASSOCIATION—*Power of Directors to fix Compensation of Secretary.*—The interest of members of these associations is carefully conserved by the statute, which should be strictly enforced by the courts to that end. The directors have no power to fix or enlarge the compensation of the secretary, and take from loan or working funds, other than as provided by the charter, money to pay him for extra services.

2. SAME—*Issue of Paid-up Stock.*—Under our statute the issue of paid-up stock by a building and loan association is *ultra vires* and without authority.

3. SAME—*Salaries of Officers.*—The salary of the secretary of a building and loan association is fixed by the charter adopted by the stockholders. The directors can not change it, but must conform to it, and where it fixes the salary of an officer, any allowance in excess of the same can not be made by the association or its directors.

4. SAME—*Contract to Pay in Excess of Salaries Void.*—An undertaking by a building and loan association, to pay an officer an extra fee or sum beyond that fixed by the charter, is not binding upon the corporation, although extra services have been rendered.

5. SAME—*Payments in Excess of Salaries may be Recovered Back.*—Payments made by the directors of a building and loan association to an officer, in excess of his salary as fixed by the charter, may be recovered back by the association.

6. DURESS—*Payments Made by Compulsion.*—A payment is not to be regarded as compulsory, unless made to relieve the person or property of

(58)

Loan & Protection Ass'n of Patoka v. Holland.

the party making it, from an actual and existing duress, imposed upon him by the one to whom the payment is made.

7. Same—*Threats of Prosecution—When Insufficient.*—Threats of criminal prosecution against a person do not constitute a sufficient duress in law to enable him to recover back money paid, where no warrant has been issued or criminal proceedings commenced.

Assumpsit, for money paid under duress. Appeal from the Circuit Court of Marion County; the Hon. Benjamin R. Burroughs, Judge, presiding. Heard in this court at the August term, 1895. Reversed and remanded. Opinion filed March 7, 1896.

Frank F. Noleman and W. F. Bundy, attorneys for appellant, contended that building and loan associations are not authorized by law to issue paid-up stock. The statute expressly provides that no periodical payments shall be made on the shares of stock of such associations exceeding the sum of $2 on each share. Hurd's Rev. Statute, 379, Sec. 6; Attorney General's Report, Illinois, 1895, pages 27 to 32 inclusive, and pages 53, 55 and 64.

No officer of such associations, except the secretary, shall be entitled to compensation, and such compensation must be fixed in the charter. The charter must be adopted by the stockholders and not by the board of directors. Therefore the board of directors has no legal authority to fix the compensation of the secretary. Hurd's Rev. Statute, 378, 379, Secs. 2, 5.

It is self-evident that such associations can not do indirectly what they have no power to do directly. That an officer thereof can not legally be paid a salary or other compensation by such an association through its secretary, and thus avoid the law which prohibits such officer from receiving such salary or compensation directly from such association.

The money received by the appellee by means of these fees was a compensation or salary, and therefore illegally received. The demand of the appellant that it be paid back, is a legal demand, and when so paid can not be recovered back, although paid under protest. The rule is, that to warrant such recovery there must be compulsion—actual, present, potential—and the demand must be illegal. The payment

must be induced by force of process available for instant seizure of person or property, and the property so paying must give notice of the illegality of the demand and of his involuntary payment. 18 Am. & Eng. Ency. Law, 214; Harvey v. Girard Nat. Bank, 119 Pa. 212; De LaCuesta v. Ins. Co. of North America, 136 Pa. 62.

The element of coercion being essential, mere protest or notice alone, however, can not change the character of the payment nor convert what in law would otherwise be a voluntary payment into an involuntary one. Detroit v. Martin, 34 Mich. 170; Harvey v. Girard Nat. Bank, 119 Pa. 212; De LaCuesta v. Ins. Co. of North America, 136 Pa. 62; 18 Am. & Eng. Ency. Law, 219 (note).

To justify the defense of duress by means of threats, the threats must be such as would naturally produce such fear as would overcome the will of one with ordinary courage. Young v. Simms, 41 Ill. App. 30; Lange v. Soffett, 33 Ill. App. 625; Schwartz v. Schwartz, 29 Ill. App. 526.

Mere threats of imprisonment for which there is no ground do not constitute duress, as the person threatened could not be put in fear thereby. Nor do threats of criminal prosecution constitute duress where neither warrant has been issued nor proceedings commenced. Rendleman v. Rendleman (Ill.), 41 N. E. 224; Higgins v. Brown, 78 Me. 473; Harmon v. Harmon, 61 Me. 227; Compton v. Bunker Hill Bank, 96 Ill. 301.

Money voluntarily paid with a full knowledge of the facts and circumstances under which it was demanded can not be recovered back upon the ground that the payment was made under a misapprehension of the legal rights and obligations of the party paying. A payment is not to be regarded as compulsory unless made to relieve the person or property from an actual and existing duress imposed upon him by the party to whom the money is paid. Elston et al. v. City of Chicago, 40 Ill. 514; Swanston v. Ijams, 63 Ill. 165; 18 Am. & Eng. Ency. Law, 223.

When a contract is illegal, whether it is because of being *malum prohibitum* or *malum in se*, the law will not afford

affirmative relief to either, but will leave the parties as it found them. Compton v. Bunker Hill Bank, 96 Ill. 301; St. L., J. & Chi. R. R. Co. v. Mathers, 71 Ill. 592; Jerome v. Bigelow, 66 Ill. 452; Liness v. Hesing, 44 Ill. 113.

The board of directors as a board may bind the corporation by admissions and declarations, but a single director president or secretary can not do so, except when acting within the scope of his authority or as special agent, and the power to act in the particular manner must be shown. Cook on Stock and Stockholders, 726; 17 Am. & Eng. Ency. Law, 81, 83 and 93.

The directors of a corporation are regarded as trustees for the stockholder. The law has absolutely inhibited a trustee from placing himself in a position where his own private interests would naturally tend to make him neglectful of his obligations to his principal. Appellee being a director and vice president of appellant company could neither make a contract on behalf of such company and at the same time reserve a private interest, nor could he subsequently become interested in its execution with a view to participation in the profits of the contract. And the *cestui que trust* has its election to ratify the act of the trustee and insist upon all the advantage of it, or disaffirm it *in toto*, as shall be most to its interest. G. C. & S. R. R. Co. v. Kelly et al., 77 Ill. 435, and cases cited; Cook on Stock and Stockholders, Secs. 649, 650.

Contracts made with a corporation in which the directors are interested either directly or indirectly are voidable at the instance of the company or the stockholders; and this is so whether the directors entered into the contract in its inception or subsequently acquired an interest therein. 17 Am. & Eng. Ency. Law, 119, 120, 121; Root on Corporations, 245.

VAN HOOREBEKE & FORD, attorneys for appellee.

There is nothing in the statute prohibiting the issuing of paid-up stock. The provision referred to in regard to periodical payments has no application to paid-up stock, there being no periodical payments at all.

Our courts have been exceedingly liberal in the construction of statutes in favor of these associations.   Freeman v. Ottawa, etc., 114 Ill. 183; Winzet v. Q. Build. Ass'n, 128 Ill. 84; Payette v. F. H. Ass'n, 27 Ill. App. 307; 31st St. v. Wetherell, 43 Ill. App. 509; Kadish v. G. C. L. & B. Ass'n, 47 Ill. App. 602.

It is a familiar rule of law that the action of assumpsit for money had and received will lie, wherever a party has obtained money which in equity and in good conscience he ought not to retain and which he should in justice return to the plaintiff.

The main inquiry is whether the defendant holds money which *ex æquo et bono* belongs to the plaintiff.   Allen v. Stinger, 74 Ill. 119; Barnes v. Johnson, 84 Ill. 95; Watson v. Woolverton, 41 Ill. 241; Alderson v. Ennor, 45 Ill. 128; Sangamon Co. v. City of Springfield, 63 Ill. 66; Laflin v. Howe, 112 Ill. 253; 2 Chitty on Contracts (11th Am. Ed.), 928 and 936; 2 Wharton on Contracts, Sec. 730.

When the payment of money is compelled by undue advantage taken of the situation of the party paying it and is against equity and good conscience it may be recovered back.   County of La Salle v. Simmons, 5 Gil. 513.

A payment made under protest to avoid prosecution under a void ordinance, is an involuntary payment, for the recovery of which an action of assumpsit will lie.   Prikett v. Madison Co., 14 Ill. App. 463; Harvey & Boyd v. Town of Olney, 42 Ill. 336; Chicago & A. R. R. v. C. V. & W. Coal Co., 79 Ill. 121.

MR. JUSTICE SAMPLE DELIVERED THE OPINION OF THE COURT.

The appellee brought this suit to recover certain money alleged to be due him.   1. For services performed for appellant.   2. For money paid by him to appellant under protest, etc.

The main contention is as to the second ground of action, on which he obtained judgment.

The facts in brief are that appellant is a loan and homestead association, and appellee was a director thereof dur-

ing most of the time of its existence. One W. C. Kesner was secretary of the association, whose compensation was fixed as follows: He was to receive the admission fees in membership, the transfer fees of stock, and the quarterly dues on all stock sold. He was to furnish the room for the association free of expense and pay the expense for lights, fuel, stationery, etc.

Thereafter the board of directors, on the motion of appellee, passed a resolution to issue two classes of paid-up stock, one class interest bearing, and the other class non-interest bearing; whereupon, as claimed by appellee, a contract was made by the board with the secretary, to allow him $10 for each share of paid-up stock that was subscribed, in addition to his other compensation. There is no record of such a contract, however. No resolution was passed to that effect or vote taken. After that time, the secretary made a contract with the appellee, while he was a director, to solicit subscriptions for running and paid-up stock, and was to pay such solicitor one-half that was allowed the secretary, viz., twenty-five cents for the running stock and $5 for the paid-up stock, per share. The appellee obtained subscriptions for about five hundred shares of paid stock, for which he received about $2,500, and the secretary the same amount. This $10 fee was taken out of the money paid by the subscriber and only the balance paid into what was called the working fund.

In August, 1894, an inspector from the auditor's office inspected the affairs of the association and found there was a deficit of $4,058.20; that is, the association could not pay back to the members the amount they had paid in, outside of profits, by that sum. He discovered the fact that $10 was taken from each share of paid-up stock, as before stated, and attributed the deficit principally to that cause, and claimed that such an arrangement was illegal. The fact of the shortage and its cause he laid before the board of directors and stated that if the amount was not made good the office would report the matter to the attorney-general for action. The secretary at once agreed to return the

amount received by him and appellee was urged to do the same, but he declined at the time to do so, offering, however, to pay one-ninth of the whole sum, as his share as a member of the board of directors.  The other directors declined to do this, and the matter ran along for several days.  In the meantime appellee was earnestly urged to pay up what was alleged to be the amount received by him as fees on such paid-up stock.  He claims the directors, not as a board, but as individuals, threatened him with prosecution criminally if he did not do so, and thereafter, because of such threats, he proposed if they would allow him the book value of the stock he held and accept his resignation as a director that he would, in that way, return such fees.  This proposition was accepted, his stock was canceled and his resignation accepted, which was in full settlement of the liability claimed against him, which amounted to $1,856.20.  The actual money he paid for the stock so canceled was $1,011 and some cents.  The book value of his stock was $188 and some cents in excess of said claim, which amount was at the time paid to and received by appellee.  At the time of the settlement, the book value was not computed further than July, 1894.  Thereafter, in November, the book value, with dividends to which this canceled stock was entitled to be credited for August, was computed, which dividend amounted to $21.44.. This sum was claimed by appellee and paid to him November, 1894.

The declaration avers that the defendant " then and there threatened the plaintiff with prosecution and imprisonment if he failed to refund or pay the same to the defendant as demanded, and the plaintiff avers that by reason of the demand and threats aforesaid, and all the while protesting against the right of said defendant to said money, * * * under protest paid to said defendant the sum of twenty-five hundred dollars, to which the defendant had no right or claim against the plaintiff, and which money so paid the defendant was and is the money of the plaintiff."

The evidence shows that no suit was instituted against appellee, either civilly or criminally, and that the associa-

tion, by its board of directors, took no action of any kind in regard to the claim against appellee before the settlement. Appellant therefore claims there was no duress or coercion.

This position is considered well taken for several reasons:

1. Neither the secretary nor the appellee had a legal right to retain any of the money received for said stock as compensation. By Sec. 5 of Loan and Homestead Act, Chap. 32, it is provided: "The officers of the company shall consist of a president, vice-president, secretary and treasurer, to be elected at the annual meeting of the board of directors, as may be provided for in the charter and by-laws of the association; provided, that the secretary only shall be entitled to compensation, and in such an amount as may be provided for in the charter of such association." The charter here referred to is evidently what is generally termed the constitution. It is adopted by the stockholders (Section 2). The directors can not change or modify the charter. They must conform to it. "Where the charter or other fundamental law fixes the salaries of any officers, allowance in excess of the same can not be made by the corporation or its directors." Endlich on Law of Building Associations, Section 223, citing various authorities.

Even a promise to pay an extra fee or sum beyond that fixed by law is not binding, though he renders extra services. City of Decatur v. Vermillion, 77 Ill. 315. As suggested by Endlich in Section 226, there are strong reasons for applying this rule of law to such associations as this. The charter of the association, by some inadvertence, was not introduced in this case to show what the compensation of the secretary was fixed at, but doubtless the compensation testified to by the secretary as allowed to him before the alleged understanding with the directors as to fees for paid-up stock, was that fixed by the charter. It is fair to assume the statute requiring the compensation of the secretary to be fixed in the charter had been complied with, and that the secretary was being so paid prior to the issue of the paid-up stock.

2. The money so received for paid-up stock, belonging to the association, it had a legal right, for the reasons stated,

to demand that all of the money should be paid over. This is true, although the issue of paid-up stock was *ultra vires*, which we have no doubt it was under our statute. Having a legal right to make the demand, the association had also the legal right to take any proper steps to enforce it. In any event the threat must be of the unlawful use of process in order to be coercion. Taylor v. Marcum, 16 Ill. 93; Heaps v. Dunham et al., 95 Ill. 583; Compton v. Bunker Hill Bank, 96 Ill. 307. In this latter case it will be observed the threat was by the corporation by way of resolution. In the case at hand, the directors, as such, made no threats. Some of those who were directors, as individuals, it is alleged, did. It is very questionable whether such talk was admissible to prove the averment of the declaration that the association made threats.

The declarations of an agent of the company, whether incorporated or not, are only admissible when they form part of the *res gestæ*. Lincoln Coal Co. v. McNally, 15 Ill. App. 184; School Directors v. Wallace, 9 Ill. App. 313; County of LaSalle v. Simmons, 5 Gilm. 513. But waiving that question and conceding all claimed by appellee as to threats, there was no abuse of process or threat to do so, under our holding of the legal right to demand this money.

3. No criminal proceedings were begun against appellee. In the case of Budford v. City of Chicago, 40 Ill., at p. 420, it is said, " But the court, in reviewing all the English and American decisions on what is or is not a compulsory payment, recognize and affirm the doctrine of the Massachusetts cases we have cited and say : ' We consider, therefore, the doctrine as established, that a payment is not to be regarded as compulsory, unless made to emancipate the person or property from an actual and existing duress imposed upon it by the party to whom the money is paid, and that a payment made under the apprehension, or even menace, of an impending distress warrant, would not render it a payment by compulsion.' "

In the case of Elston v. City of Chicago, 40 Ill. 514, it is said : " It is invariably held that a payment is not to be

regarded as compulsory unless made to relieve the person or property from an actual and existing duress imposed upon him by the one to whom the money is paid." In Rendleman v. Rendleman, 156 Ill. p. 573, it is said: "Nor do threats of criminal prosecution constitute duress when neither warrant has been issued nor proceedings commenced." It is said, however, that appellee was *ex aquo et bono* entitled to this money and in such cases it can be recovered back under an *indebitatus* count. We have already held he was not so entitled to it, for reasons stated. The interest of members in these associations, many of whom are poor and struggling to pay for their homes, is carefully conserved by the statute, which in our judgment, should be strictly enforced by the courts to that end. The directors have no power to fix or enlarge the compensation of the secretary and take from loan or working funds other than as provided by the charter, money to pay him for extra services.

The appellee made a fair and liberal settlement with appellant, voluntarily, of the claim against him, of which he can not now be heard to complain. The judgment is reversed and not remanded.