2022 IL App (2d) 210331
No. 2-21-0331
Opinion filed April 14, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| SOPRIS CONCRETE, LLC, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 20-CH-304 |
| | ) | |
| KRYSTAL MEEKS, n/k/a Krystal Stewart, | ) | Honorable |
| | ) | Kevin T. Busch, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Presiding Justice Bridges and Justice Schostok concurred in the judgment and opinion.

**OPINION**

¶ 1 Plaintiff, Sopris Concrete, LLC, obtained a $13,992.62 judgment by confession against defendant, Krystal Meeks. Defendant appeals. We affirm and remand for a determination of the contractual attorney fees that defendant owes to plaintiff in connection with this appeal.

¶ 2                                    I. BACKGROUND

¶ 3 Between November 15, 2016, and March 21, 2017, plaintiff performed concrete foundation and stone work as a subcontractor at defendant's property. On April 13, 2017, plaintiff recorded a mechanic's lien, claiming that it was owed approximately $17,300.

¶ 4 In March 2019, the parties executed a "settlement agreement and confession of judgment" (Settlement Agreement), which "supersedes and replaces all prior representations, statements, and

agreements between the Parties, oral or written." The Settlement Agreement recites that it was "the product of negotiation between and among the Parties, including their respective counsel." At oral argument on appeal, however, the parties' respective attorneys confirmed that defendant was *not* represented by counsel when she signed the Settlement Agreement. In the Settlement Agreement, the parties acknowledged, *inter alia*, that (1) plaintiff performed all work in a "workmanlike and satisfactory manner," (2) such work "improved" defendant's property and made it "more valuable," (3) plaintiff was owed $13,362.99 in connection with the work, (4) plaintiff had "the right and ability to seek foreclosure" of its mechanic's lien, and (5) the parties "desire[d] to resolve all issues presented *** without the cost, uncertainty, and acrimony of litigation." Defendant agreed to pay plaintiff $7750, on or before May 20, 2019. Plaintiff agreed to "take any and all action necessary to release" the mechanic's lien within 14 days of payment. The parties agreed to "release and discharge each other from any and all liability, claims, counterclaims, and causes of action" based on or arising out of the "conduct" described in the Settlement Agreement. The Settlement Agreement contained the following confession-of-judgment provision:

> "In the event [defendant] does not pay the Settlement Amount on or before May 20, 2019, the parties hereby expressly agree and acknowledge that [plaintiff] shall be entitled to entry of a Judgment against [defendant] and recordable against [defendant's] property in the amount of $13,362.99, plus any and all attorneys' fees necessarily incurred to enforce the terms of this Agreement and statutory interest at the rate of 9% *per annum* compounded from March 21, 2017, up to and including the date of final payment."

¶ 5    In August 2020, plaintiff filed a "complaint for breach of settlement agreement and confession of judgment." Plaintiff alleged that, despite being granted multiple extensions, defendant made only partial payments toward the $7750 specified in the Settlement Agreement.

Plaintiff prayed for a judgment against defendant in accordance with the terms of the Settlement Agreement.

¶ 6    Defendant moved to dismiss the complaint pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2018)). Defendant argued that, because the parties' "original transaction" (*i.e.*, the work on defendant's property) was a consumer transaction, the Settlement Agreement was "a debt payment instrument involving a consumer debt." From this premise, defendant contended that the confession-of-judgment provision violated section 2-1301(c) of the Code, which provided, in relevant portion:

> "No power to confess judgment shall be required or given after September 24, 1979 in any instrument used in a consumer transaction; any power to confess given in violation hereof is null and void and any judgment entered by a court based on such power shall be unenforceable. 'Consumer transaction' as used in this Section means a sale, lease, assignment, loan, or other disposition of an item of goods, a consumer service, or an intangible to an individual for purposes that are primarily personal, family, or household." 735 ILCS 5/2-1301(c) (West 2018).

¶ 7    In its response to defendant's motion to dismiss the complaint, plaintiff argued that the Settlement Agreement was not a consumer transaction. According to plaintiff, the purpose of section 2-1301(c) of the Code was to ensure that parties to consumer transactions may challenge the contract itself and raise disputes as to performance or workmanship, if necessary. Plaintiff reasoned that, because the confession-of-judgment provision appeared in a settlement agreement that was executed after plaintiff had already performed its original contractual obligations, the Settlement Agreement did not run afoul of section 2-1301(c).

¶ 8    In her reply in support of her motion to dismiss, defendant asserted that the parties' original consumer transaction was never completed, as defendant never paid plaintiff in full. Defendant proposed that the Settlement Agreement was "a modification to the original transaction" that "merged into the original consumer transaction," thereby implicating section 2-1301(c) of the Code.

¶ 9    On January 22, 2021, the court denied defendant's motion to dismiss. The record on appeal does not include transcripts of any court appearances.

¶ 10    Defendant moved to reconsider the January 22, 2021, order. She raised a new issue, arguing that the Settlement Agreement lacked consideration because the mechanic's lien was defective. Defendant reasoned that, because the mechanic's lien was unenforceable, plaintiff did not give up anything of value in the Settlement Agreement by forgoing its right to pursue that lien.

¶ 11    Plaintiff responded that defendant's motion to reconsider improperly asserted a new issue that could have been raised in the original motion to dismiss. Plaintiff further contended that defendant's new argument was misguided, as the mechanic's lien was valid and the parties waived all their claims and defenses with respect to that lien.

¶ 12    On April 23, 2021, the court denied defendant's motion to reconsider. The court found that the Settlement Agreement was "valid and enforceable" and that plaintiff was entitled to a judgment by confession. The court granted plaintiff leave to file an affidavit of attorney fees. The court continued the matter for a prove up of fees and the entry of a final judgment.

¶ 13    On May 21, 2021, the court entered a $13,992.62 judgment (including interest) in plaintiff's favor against defendant. Defendant timely appealed.

¶ 14                                    II. ANALYSIS

¶ 15    Defendant reiterates her arguments that the confession-of-judgment provision in the Settlement Agreement violated section 2-1301(c) of the Code and that the Settlement Agreement lacked consideration.

¶ 16    We review *de novo* matters of statutory interpretation. *In re Marriage of Dynako*, 2021 IL 126835, ¶ 14. The cardinal rule of statutory construction is to ascertain and effectuate the legislature's intent. *Thomas v. Khoury*, 2021 IL 126074, ¶ 11. "The most reliable indicator of legislative intent is the language of the statute, which must be given its plain and ordinary meaning." *Thomas*, 2021 IL 126074, ¶ 11. We must read the statute as a whole and consider words and phrases in context. *Thomas*, 2021 IL 126074, ¶ 11. In conducting our analysis, we may "consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another." *Evans v. Cook County State's Attorney*, 2021 IL 125513, ¶ 27.

¶ 17    Once again, section 2-1301(c) of the Code provides, in relevant portion:

"No power to confess judgment shall be required or given after September 24, 1979 in any instrument used in a consumer transaction; any power to confess given in violation hereof is null and void and any judgment entered by a court based on such power shall be unenforceable. 'Consumer transaction' as used in this Section means a sale, lease, assignment, loan, or other disposition of an item of goods, a consumer service, or an intangible to an individual for purposes that are primarily personal, family, or household." 735 ILCS 5/2-1301(c) (West 2018).

According to our research, only two Illinois cases have addressed a dispute as to whether a transaction was a "consumer transaction" for purposes of this statute. In *Baker v. Gray*, 141 Ill. App. 3d 444, 446 (1986), the court held that a party's "bald assertion that [a] confessed judgment

involved a consumer transaction" did not justify opening the judgment, as the party did "not set forth the facts surrounding the transaction." In *Herget National Bank of Pekin v. Theede*, 181 Ill. App. 3d 1053, 1055-56 (1989), the issue was whether a debtor signed a promissory note for business rather than personal purposes. Neither case addressed the issue at hand: whether a settlement agreement was a consumer transaction where the settlement resolved a mechanic's lien that arose out of a consumer transaction.

¶ 18     We hold that the Settlement Agreement here was not a consumer transaction. The premise of defendant's argument—that the Settlement Agreement arose out of an underlying consumer transaction—is dubious. The Settlement Agreement directly arose out of a mechanic's lien, and foreclosure of a lien certainly does not meet the statutory definition of a consumer transaction. At any rate, the plain language of section 2-1301(c) of the Code voids only confession-of-judgment provisions that appear "in any instrument used in a consumer transaction." 735 ILCS 5/2-1301(c) (West 2018). The statute does not nullify confession-of-judgment provisions merely because they arguably "relate to" or "arise out of" consumer transactions. See *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 408 (2010) (noting that "[a] court may not add provisions that are not found in a statute"). We cannot plausibly say that the Settlement Agreement here—entered two years after plaintiff completed its performance under the contract—was an instrument that was used in a consumer transaction. Significantly, the Settlement Agreement itself did not effectuate any "sale, lease, assignment, loan, or other disposition of an item of goods, a consumer service, or an intangible." 735 ILCS 5/2-1301(c) (West 2018). Accordingly, the Settlement Agreement did not fall within the statutory definition of a "consumer transaction."

¶ 19     Our conclusion is consistent with the purposes of the statute, as reflected by its legislative history. Prior to the late 1970s, Illinois placed "virtually no limitations" on the use of confession-

of-judgment provisions in contracts. Cindy F. Wile, *Confessions of Judgment In Illinois: The Need for Change Persists*, 10 Loy. U. Chi. L.J. 141, 141 (1978). In 1979, Public Act 81-1049 (eff. Sept. 24, 1979) (see Ill. Rev. Stat. 1979, ch. 110, ¶ 50) went into effect, precluding the use of judgments by confession in consumer transactions. *Community Thrift Club, Inc. v. Dearborn Acceptance Corp.*, 487 F. Supp. 877, 878 n.1 (N.D. Ill. 1980). It is evident from the floor debates surrounding the bill that became Public Act 81-1049 (eff. Sept. 24, 1979) that this was compromise legislation. The original House bill would have barred the use of confession-of-judgment provisions in all contexts. See 81st Ill. Gen. Assem., House Proceedings, May 23, 1979, at 44 (statements of Representative Breslin) (noting that the bill would "abolish judgments by confession"). The Senate, however, limited that prohibition to consumer transactions, and that is the version of the bill that the legislature ultimately passed. See 81st Ill. Gen. Assem., House Proceedings, June 29, 1979, at 19 (statements of Representative Breslin) (explaining the bill's procedural history). Throughout this process, multiple legislators emphasized that consumer transactions often involve disparities in sophistication and bargaining power that are not characteristic of commercial transactions. See, *e.g.*, 81st Ill. Gen. Assem., Senate Proceedings, June 27, 1979, at 141 (statements of Senator Netsch) (explaining that, unlike consumer transactions, commercial transactions involve "parties who are essentially on even terms"); 81st Ill. Gen. Assem., Senate Proceedings, June 27, 1979, at 142 (statements of Senator Johns) (expressing concern about protecting "the unintelligent, the unknowledgeable, [and] the people who sign in desperation many times," along with people who "have good intentions when they buy something and then they find it faulty"); 81st Ill. Gen. Assem., House Proceedings, June 29, 1979, at 22 (statements of Representative Leinenweber) ("Now, by eliminating the commercial transactions from the Bill, we have

eliminated those persons who are sophisticated and who know exactly what they're doing when they sign a note which contains the confession clause.").

¶ 20    The concerns that prompted the prohibition against using confession-of-judgment provisions in consumer transactions are not present here. Defendant did not purchase a faulty product. To the contrary, there was no dispute that (1) plaintiff fulfilled its contractual duties in a "workmanlike and satisfactory manner" and (2) such work "improved" defendant's property and made it "more valuable." Nor does it appear that there was any disparity in bargaining power between the parties. We note that defendant received rather favorable treatment under the Settlement Agreement, as plaintiff agreed to accept 58% of what it was owed. Accordingly, although the plain language of section 2-1301(c) of the Code convinces us that the Settlement Agreement was not a "consumer transaction," the legislative history further underscores that a settlement agreement like this was not what the legislature had in mind when it enacted the statute.

¶ 21    Case law from other jurisdictions, though arising in different contexts, lends additional support to our conclusion that the Settlement Agreement was not a "consumer transaction." Specifically, courts have held that, where parties settle a dispute that arose from a consumer transaction, the settlement itself is not a consumer transaction that can form the basis for a consumer fraud claim. See *Wagner Equipment Co. v. Wood*, Civ. No. 11-466 MV/GBW, 2013 WL 12089509, *8 (D. N.M. Sept. 26, 2013) ("[P]romises made in connection with a settlement agreement are not actionable under the [New Mexico Unfair Practices Act], because neither party to the settlement agreement is a buyer of goods or services when seeking to settle a claim."); *Ortiz v. Collins*, 203 S.W.3d 414, 425 (Tex. App. 2006) ("Negotiations to settle litigation do not constitute consumer transactions, even when the subject of the litigation involves a good such as a house. [Citation.] Otherwise, every lawsuit concerning a dispute over the purchase or lease of a

good or service would itself constitute a consumer transaction."); *Kincaid v. Cummins Engine Co.*, No. 05-04-01803-CV, 2005 WL 1744959, *1 (Tex. App. July 26, 2005) (reasoning that a settlement agreement "itself was not a good or service[,] nor were the [plaintiffs] looking to purchase goods or services when settling the claim"). The reasoning of these cases is persuasive and applicable here.

¶ 22    In arguing to the contrary, defendant relies on cases reciting that multiple instruments may collectively constitute a single contract. See, *e.g.*, *Peters & Fulk Realtors, Inc. v. Shah*, 140 Ill. App. 3d 301, 305 (1986) ("The general rule is that 'in the absence of evidence of a contrary intention, where two or more instruments are executed by the same contracting parties in the course of the same transaction, the instruments will be considered together and construed with reference to one another because they are, in the eyes of the law, one contract.' " (quoting *Tepfer v. Deerfield Savings & Loan Ass'n*, 118 Ill. App. 3d 77, 80 (1983))). From this premise, defendant argues that, because the Settlement Agreement "arose from" the parties' initial consumer transaction, the Settlement Agreement "merged into the original consumer transaction," thereby implicating section 2-1301(c) of the Code.

¶ 23    This argument is unpersuasive. The Settlement Agreement specified that it was intended to "supersede[ ] and replace[ ]" all prior agreements, not merge into them. Additionally, as explained above, section 2-1301(c) of the Code voids only confession-of-judgment provisions that appear "in any instrument used in a consumer transaction." 735 ILCS 5/2-1301(c) (West 2018). The statute does not nullify confession-of-judgment provisions merely because they "arise out of" a consumer transaction. Moreover, defendant's argument presupposes that the initial interaction between the parties and their Settlement Agreement two years later were part of the same transaction. This assumption is untenable. As explained above, the Settlement Agreement did not

meet the statutory definition of a "consumer transaction," as it did not effectuate any "sale, lease, assignment, loan, or other disposition of an item of goods, a consumer service, or an intangible." 735 ILCS 5/2-1301(c) (West 2018).

¶ 24    Defendant's other argument is that the Settlement Agreement is unenforceable for lack of consideration, given that the mechanic's lien that plaintiff filed purportedly had defects on its face and was not properly perfected. "Whether a contract contains consideration is a question of law, which we review *de novo*." *Dohrmann v. Swaney*, 2014 IL App (1st) 131524, ¶ 23. "Forbearance, including the compromise of a disputed claim or a promise to forgo legal action, is *** consideration." *Tower Investors, LLC v. 111 East Chestnut Consultants, Inc.*, 371 Ill. App. 3d 1019, 1027-28 (2007). "Where a party's compromise of its claim is made in good faith, even if that claim is ultimately shown to be invalid, the forbearance is nevertheless sufficient consideration to support a contract." *Tower Investors*, 371 Ill. App. 3d at 1030; see *In re Estate of Herwig*, 237 Ill. App. 3d 737, 741 (1992) ("The compromise of a disputed claim, even if that claim is not valid, will serve as sufficient consideration for the formation of a contract as long as that claim is made in good faith.").

¶ 25    Here, defendant does not argue in her brief that plaintiff acted in bad faith in pursuing its mechanic's lien or entering into the Settlement Agreement. In response to questions at oral argument, however, defendant's counsel argued that plaintiff settled in bad faith because there were defects on the face of the mechanic's lien.

¶ 26    In *Heaps v. Dunham*, 95 Ill. 583 (1880), our supreme court distinguished between dubious claims and claims that the prosecuting party has no legal right to pursue. In that case, a young woman alleged that she was impregnated by a man. She filed a complaint alleging bastardy, and she threatened to have him charged with seduction. The parties settled: $550 for the bastardy claim

and $500 for the seduction claim. The man subsequently challenged the settlement agreement, arguing that the woman was never pregnant. The supreme court acknowledged that there was "great doubt" as to whether the woman had been pregnant. *Heaps*, 95 Ill. at 590. Nevertheless, in the absence of evidence of "fraud or oppression," the man was bound by his decision to settle the bastardy claim. *Heaps*, 95 Ill. at 590. By contrast, the woman had "no legal right" to bring a seduction claim, as such claim could be asserted only by her parents. *Heaps*, 95 Ill. at 591. Thus, with respect to the seduction claim, "[t]here was no legal right to settle, or doubtful claim to compromise." *Heaps*, 95 Ill. at 592. Under these circumstances, the supreme court upheld the settlement with respect to the bastardy claim but determined that there was no consideration supporting the $500 that the man promised to pay to settle the seduction claim. *Heaps*, 95 Ill. at 592.

¶ 27 Here, plaintiff had a legal right to pursue a mechanic's lien, as defendant allegedly did not pay for the work that plaintiff performed. There is no hint in the record that plaintiff defrauded defendant or that the Settlement Agreement resulted from "oppression." The record contains no evidence documenting the circumstances surrounding the settlement, so there simply is no basis for a charge of bad faith. Just as the man in *Heaps* waived his right to challenge the facts supporting a dubious bastardy claim, defendant's decision to settle here was "conclusive and binding between the parties." *Heaps*, 95 Ill. at 590. The fact that defendant now identifies purported technical defects with the mechanic's lien does not mean that the Settlement Agreement lacked consideration.

¶ 28 Plaintiff requests an award of contractual attorney fees incurred in the defense of this appeal. Defendant does not respond to that request in her brief. At oral argument, defendant's counsel acknowledged that, if we affirm the judgment, we have the discretion to remand the matter

for "determination of further attorney's fees." The Settlement Agreement includes language entitling plaintiff to "any and all attorneys' fees necessarily incurred to enforce the terms of this Agreement." We remand the matter for the trial court to determine the amount of contractual attorney fees that defendant owes to plaintiff in connection with this appeal.

¶ 29                                III. CONCLUSION

¶ 30     The judgment of the circuit court of Kane County is affirmed, and the matter is remanded for a determination of the contractual attorney fees that defendant owes to plaintiff in connection with this appeal.

¶ 31     Affirmed and remanded.

**No. 2-21-0331**

| | |
|---|---|
| **Cite as:** | *Sopris Concrete, LLC v. Meeks*, 2022 IL App (2d) 210331 |
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 20-CH-304; the Hon. Kevin T. Busch, Judge, presiding. |
| **Attorneys for Appellant:** | Stuart A. Petersen, of Ruddy & Petersen Law Group, LLC, of Aurora, for appellant. |
| **Attorneys for Appellee:** | Tait J. Lundgren, of Foster, Buick, Conklin & Lundgren, LLC, of Sycamore, for appellee. |