**2021 IL 126074**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 126074)

MONIQUE THOMAS *et al.*, Appellees, v. EDGARD KHOURY, M.D.,
*et al.*, Appellants.

*Opinion filed December 16, 2021.*

CHIEF JUSTICE ANNE M. BURKE delivered the judgment of the court, with opinion.

Justices Theis, Neville, Overstreet, and Carter concurred in the judgment and opinion.

Justice Garman dissented, with opinion, joined by Justice Michael J. Burke.

**OPINION**

¶ 1     The circuit court of Cook County certified the following question of law:

"Whether section 2.2 of the Wrongful Death Act, 740 ILCS 180/2.2, bars a cause of action against a defendant for fetal death if the defendant knew or had a medical reason to know of the pregnancy and the alleged malpractice resulted in a non-viable fetus that died as a result of a lawful abortion with requisite consent."

The appellate court answered the question in the negative. 2020 IL App (1st) 191052. For the reasons that follow, we affirm.

¶ 2                                   BACKGROUND

¶ 3        Plaintiffs Monique Thomas and Christopher Mitchell brought a wrongful-death action against defendant doctors Edgard Khoury and Robert Kagan. In their complaint, plaintiffs allege that defendants negligently failed to recognize that Thomas was pregnant before performing elective surgery on her and administering anesthesia, pain medication, and antibiotics. These actions, according to plaintiffs, "resulted in injury to [the fetus] which was irreversible." Plaintiffs further allege that, after the fetus was injured, Thomas was informed by another physician that the fetus would not survive to term and the pregnancy should therefore be terminated. Thomas accepted the recommendation and thereafter had a lawful, consensual abortion. Because the abortion would not have occurred but for defendants' negligent conduct and the injuries suffered by the fetus, plaintiffs allege that defendants' negligence "ultimately caused the death of" the fetus.

¶ 4        Defendants filed a motion to dismiss pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2018)), emphasizing the fact that Thomas elected to have an abortion. Defendants maintain that, even if their actions during the treatment of Thomas were negligent and even if those actions injured the fetus, they cannot be held liable in a wrongful death action because the "immediate cause of the fetus's death" was the abortion, not their negligent conduct.

¶ 5        An "immediate cause" or, as it is more commonly known, a "superseding cause" is a natural force or act of a third party that intervenes between the defendant's tortious conduct and the injury at issue to absolve the defendant of liability. In such a situation, both the tortious aspect of the defendant's conduct and

the superseding cause are causes in fact of the injury, but for reasons of fairness, the defendant's conduct is no longer considered a legal cause, and the defendant is absolved of liability. *Bentley v. Saunemin Township*, 83 Ill. 2d 10, 15 (1980). Not every intervening force or third-party act amounts to a superseding cause. An intervening force or act will constitute a superseding cause only when it is both independent of the defendant's actions and "so extraordinary as to fall outside of the class of normal events." Restatement (Second) of Torts § 443 cmt. b, at 473 (1965); *Staub v. Proctor Hospital*, 562 U.S. 411, 420 (2011) (a cause is superseding only if it is of independent origin and was not foreseeable). 74 Am. Jur. 2d *Torts* § 28 (Aug. 2021 Update) (a superseding cause "is a factor of such extraordinary, unforeseeable nature" that "the original wrongdoer" cannot rightfully be held liable for the victim's injuries and is therefore immunized from liability).

¶ 6 Ordinarily, whether a force of nature or act of a third party amounts to a superseding cause such that the defendant's tortious conduct cannot be deemed a legal cause is a question of fact to be resolved during litigation. *Heastie v. Roberts*, 226 Ill. 2d 515, 545 (2007) (proximate causation, which consists of both cause in fact and legal cause, "is ordinarily a question of fact for the jury to decide"). In this case, however, defendants maintain that plaintiffs' wrongful-death claim must be dismissed as a matter of law because of section 2.2 of the Wrongful Death Act (740 ILCS 180/2.2 (West 2018)). Section 2.2 states, in full:

> "The state of gestation or development of a human being when an injury is caused, when an injury takes effect, or at death, shall not foreclose maintenance of any cause of action under the law of this State arising from the death of a human being caused by wrongful act, neglect or default.
>
> There shall be no cause of action against a physician or a medical institution for the wrongful death of a fetus caused by an abortion where the abortion was permitted by law and the requisite consent was lawfully given. Provided, however, that a cause of action is not prohibited where the fetus is live-born but subsequently dies.
>
> There shall be no cause of action against a physician or a medical institution for the wrongful death of a fetus based on the alleged misconduct of the physician or medical institution where the defendant did not know and, under

the applicable standard of good medical care, had no medical reason to know of the pregnancy of the mother of the fetus." *Id.*

¶ 7 Defendants' motion to dismiss focuses on the second paragraph of section 2.2 and the language that states "[t]here shall be no cause of action against a physician or a medical institution for the wrongful death of a fetus caused by an abortion where the abortion was permitted by law and the requisite consent was lawfully given." Because a lawful abortion took place in this case and because, by definition, an abortion is always a cause in fact of a fetus's death, defendants contend that section 2.2 is "affirmative matter" (735 ILCS 5/2-619(a)(9) (West 2018)) that defeats plaintiffs' cause of action. This is so, according to defendants, even though plaintiffs' complaint alleges that defendants' negligence was also a cause in fact of the fetus's death. In essence, then, defendants assert that section 2.2 renders a lawful, consensual abortion a superseding cause as a matter of law, at least where the defendant in the wrongful death action is "a physician or medical institution."

¶ 8 Expressing uncertainty about the meaning of section 2.2 and whether it bars plaintiffs' wrongful-death claim, the circuit court denied defendants' section 2-619 motion but certified the following question under Illinois Supreme Court Rule 308(a) (eff. July 1, 2017):

"Whether section 2.2 of the Wrongful Death Act, 740 ILCS 180/2.2, bars a cause of action against a defendant for fetal death if the defendant knew or had a medical reason to know of the pregnancy and the alleged malpractice resulted in a non-viable fetus that died as a result of a lawful abortion with requisite consent."

The appellate court allowed defendants' Rule 308 appeal and answered the certified question no. 2020 IL App (1st) 191052.

¶ 9 This court allowed defendants' petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2019). We also allowed the Illinois Trial Lawyers Association to file an *amicus curiae* brief in support of plaintiffs' position. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

- 4 -

¶ 10                                        ANALYSIS

¶ 11          The certified question at issue here centers on the proper interpretation of section 2.2 of the Wrongful Death Act. The cardinal rule of statutory interpretation, to which all other canons and rules are subordinate, is to ascertain and give effect to the intent of the legislature. *Bayer v. Panduit Corp.*, 2016 IL 119553, ¶ 18. The most reliable indicator of legislative intent is the language of the statute, which must be given its plain and ordinary meaning. *Id.* The statute must be read as a whole, with words and phrases considered in context. *Id.* When interpreting the meaning of the statutory language, we presume that the legislature did not intend absurdity, inconvenience, or injustice. *Sandholm v. Kueker*, 2012 IL 111443, ¶ 41. Our review is *de novo*. *Id.*

¶ 12          There is no dispute the second paragraph of section 2.2 bars a wrongful death action brought against a physician who performs a lawful, consensual abortion. Defendants contend, however, that section 2.2 goes beyond this and that the provision also renders a lawful, consensual abortion a superseding cause as a matter of law whenever the defendant in the wrongful death action is "a physician or medical institution." We disagree.

¶ 13          Section 2.2 says nothing about barring a wrongful death action against *another physician*, that is, a physician who injures a fetus during a procedure that is entirely separate from an abortion. Nor does it say anything about abortions being a superseding cause. The principle of superseding cause is familiar and long-standing. Had the General Assembly intended that an abortion would always be a superseding cause in a wrongful death action it would have said so, explicitly.

¶ 14          Indeed, such a statement would affirmatively be required because the Wrongful Death Act is in derogation of the common law. *Williams v. Manchester*, 228 Ill. 2d 404, 419 (2008). A statute in derogation of the common law is strictly construed, meaning that common-law principles will not be deemed abrogated by the statute unless that abrogation is clearly stated. *Id.* Making a particular type of third-party act a superseding cause as a matter of law would be a departure from the well-established, common-law rule that "[p]roximate cause is ordinarily a question of fact for the jury to decide." *Heastie*, 226 Ill. 2d at 545. A strict construction of section 2.2 would thus require that the Generally Assembly state explicitly that an abortion is always a superseding cause in every wrongful death action. It did not.

¶ 15    Further, defendants' reading of section 2.2 makes little sense. Consider the following. A pregnant woman in an automobile is negligently struck by a truck, seriously injuring both the mother and the fetus. Doctors inform the woman that the fetus will not survive and, further, that she must have an abortion to save her own life. She then has a lawful, consensual abortion. In this hypothetical, if the driver of the truck wanted to assert that the abortion was a superseding cause, absolving him of any liability in a wrongful death action for the death of the fetus, he would have to litigate the question in court. He could not take advantage of section 2.2 because that provision only prohibits causes of action against "a physician or medical institution." However, according to defendants' reading of the statute, a physician who injures a fetus through medical malpractice could take advantage of section 2.2. This interpretation is untenable. Why would the legislature bar the cause of action against the negligent physician but not the negligent truck driver? There is no rational justification for this distinction. Indeed, construing section 2.2 as defendants propose would raise a serious question as to whether the granting of immunity only to the negligent physician amounts to unconstitutional special legislation. Defendants' reading of section 2.2 cannot be correct. See, *e.g.*, *People v. Orth*, 124 Ill. 2d 326, 334 (1988) (where possible, a statute will be interpreted so as to avoid an unconstitutional construction).

¶ 16    Finally, if there is any remaining doubt regarding the meaning of section 2.2, it is conclusively resolved by the legislative history of the provision. Section 2.2 began its legislative life as Senate Bill 756 (81st Ill. Gen. Assem., Senate Bill 756, 1979 Sess.). As originally introduced, Senate Bill 756 contained only the first paragraph of what was to become section 2.2. The second and third paragraphs were added later, as an amendment by the House of Representatives. See *Miller v. America Infertility Group of Illinois, S.C.*, 386 Ill. App. 3d 141, 148-49 (2008). When the bill returned to the Senate following the amendment, Senator Rhoads explained the purpose behind the second paragraph:

"Now, there had been concerns expressed over here in the Senate *about the liability of doctors who are [performing] a legal abortion*. So, over in the House in committee the attorneys for the Illinois State Medical Society and the attorneys of the Americans United for Life agreed upon an amendment which says that there shall be no cause of action against a physician or medical institution for wrongful death of the fetus caused by an abortion where the

abortion was permitted by law, and the requisite consent was lawfully given ***." (Emphasis added.) 81st Ill. Gen. Assem., Senate Proceedings, June 28, 1979, at 52 (statements of Senator Rhoads).

¶ 17     The second paragraph was added to protect the physician who performs a lawful abortion from being sued for wrongful death of the fetus. Nothing is said in the legislative history, at any point, about eliminating liability for other doctors who tortiously injure a fetus during a different medical procedure and whose tortious conduct is a but-for cause of a subsequent abortion.

¶ 18     Defendants point to *Light v. Proctor Community Hospital*, 182 Ill. App. 3d 563, 565 (1989), wherein the appellate court rejected the idea that section 2.2 is intended to bar actions only against those physicians and medical institutions who perform an abortion. *Light* is a brief opinion with very little statutory analysis. The court in *Light* did not discuss legal cause or superseding cause, nor did it recognize the illogic of its construction of section 2.2. The only significant analytical point raised in *Light* was that the Wrongful Death Act is in derogation of the common law and must be strictly constructed. *Id.* However, as noted previously, a strict construction of section 2.2 would require the inclusion of language explicitly stating that abortion is a superseding cause, which is something the General Assembly did not do. *Light*'s interpretation of section 2.2 is simply incorrect, and to that extent, *Light* is overruled.

¶ 19     When section 2.2 states "[t]here shall be no cause of action against a physician or a medical institution for the wrongful death of a fetus caused by an abortion," the "physician" being referred to is the one who performed the abortion, not another doctor who injured the fetus during a different medical procedure. Section 2.2 thus has no application to defendants here. Accordingly, the answer to the certified question is no.

¶ 20     This is not to say, however, that defendants may not continue to argue in the circuit court that, under the facts of this case, the abortion of the fetus was a superseding cause that absolves them of liability in plaintiffs' cause of action for wrongful death. They may do so; proximate causation is always part of a wrongful-death claim. *Stanphill v. Ortberg*, 2018 IL 122974, ¶ 33. What defendants may not do is point to section 2.2 and say that, in this statute, the General Assembly has

declared that an abortion is a superseding cause as a matter of law in all instances where a defendant physician has injured a fetus in a separate procedure.

¶ 21 In addition, it bears emphasizing that, to prevail on their wrongful-death claim, plaintiffs must establish that defendants' negligence caused the fetus to suffer a concrete injury prior to the abortion, not merely an increased risk of harm. See *Williams*, 228 Ill. 2d at 425-26. We further note, however, that this issue has not yet been litigated and is not properly before us. In the circuit court, defendants raised section 2.2 as an affirmative matter to defeat plaintiffs' wrongful-death claim. Defendants did not file a section 2-615 motion (735 ILCS 5/2-615 (West 2018)) challenging the sufficiency of plaintiffs' complaint on the grounds that an injury had not been properly pled. The circuit court has made no ruling on this question, and of course, plaintiffs have not been afforded the opportunity of any response. Here, the certified question takes as a given that plaintiffs have properly alleged that defendants' negligence caused a concrete injury to the fetus. Having answered the question with that assumption in place, it remains to be determined whether plaintiffs have, in fact, properly pled and can prove that injury. We express no opinion on that issue.

¶ 22 CONCLUSION

¶ 23 The certified question asks whether section 2.2 bars plaintiffs' cause of action for wrongful death. The answer to this question is no because section 2.2 addresses only the liability of the doctor who performs the abortion. The statute does not address the liability of other physicians and, in particular, does not state that an abortion is a superseding cause, as a matter of law, in all instances where a physician tortiously injures a fetus in a separate medical procedure.

¶ 24 Certified question answered.

¶ 25 Appellate court judgment affirmed.

¶ 26 Cause remanded.

¶ 27        JUSTICE GARMAN, dissenting:

¶ 28        The majority answers the certified question in the negative. Because I believe the majority's interpretation and application of the statute to these facts is incorrect, I respectfully dissent.

¶ 29        The majority states, "The cardinal rule of statutory interpretation, to which all other canons and rules are subordinate, is to ascertain and give effect to the intent of the legislature." *Supra* ¶ 11. The majority nonetheless fails to abide by, or otherwise deviates from, this rule.

¶ 30        Plainly ignoring the stated language of the statute—the most reliable indicator of legislative intent—the majority first holds there is no dispute the second paragraph of section 2.2 of the Wrongful Death Act (Act) (740 ILCS 180/2.2 (West 2018)) bars a wrongful death action brought against a physician who performs a lawful, consensual abortion. Further, it states section 2.2 "says nothing about barring a wrongful death action against *another physician*, that is, a physician who injures a fetus during a procedure that is entirely separate from an abortion." (Emphasis in original.) *Supra* ¶ 13. This is simply incorrect. The second paragraph of section 2.2 expressly states:

> "There shall be no cause of action against *a physician* or a medical institution for the wrongful death of a fetus *caused by an abortion* where the abortion was permitted by law and the requisite consent was lawfully given. Provided, however, that a cause of action is not prohibited where the fetus is live-born but subsequently dies." (Emphases added.) 740 ILCS 180/2.2 (West 2018).

¶ 31        The majority adds to and subtracts from the words of the legislature to support its conclusion. Here, the plain language makes no reference to the physician who is actually performing the abortion. Instead, the language is clear that a wrongful death action cannot be brought against *a* physician, or any physician, for wrongful death of a fetus *caused by an abortion*. The statute is devoid of any language or indication that the physician in question must have been the performing physician, which, as later discussed, is clearly rebutted by the legislative history. Rather, the statute focuses on the manner in which the fetus died—an abortion—not what led to the decision to undergo an abortion. Moreover, while the statute makes no

reference to a "superseding cause," the statute clearly expresses the legislative intent to focus on the cause of the fetal death.

¶ 32 I also cannot agree with the majority's analysis regarding the interpretation of a statute in derogation of the common law. Indeed, a statute in derogation of the common law is to be strictly construed. Yet, the majority fails to do so here. The majority makes a grand leap to the issue of proximate cause without regard for the stated question, the stated language of the statute, or the statute's legislative history.

¶ 33 The opinion errs in focusing on the statute's lack of language concerning whether an abortion is always a superseding cause in every wrongful death action. Moreover, the opinion relies on a poorly constructed and clearly distinguishable hypothetical to support its questionable analysis. For starters, defendants here are doctors and consistently held to different standards compared to the hypothetical's defendant truck driver. Very clearly, and as the opinion acknowledges, the defendant truck driver would be unable to avail himself of the protections of section 2.2 because he is not a doctor. This is stating the obvious, as the statute would simply be inapplicable to the hypothetical and is, thus, irrelevant. Moreover, it is not the judiciary's function to question the legislature when it chooses to hold negligent physicians to higher or lower standards than negligent drivers in varying scenarios. In fact, our law consistently holds negligent physicians to different standards than that of other negligent defendants. In a medical malpractice case, a medical defendant is held to the applicable professional standard of medical care as determined by the medical community. See *Addison v. Whittenberg*, 124 Ill. 2d 287, 297 (1988); see also *Walski v. Tiesenga*, 72 Ill. 2d 249 (1978). A negligent driver, however, is held to the standard of ordinary care, which is that of a reasonable person under the attendant circumstances. See *Pierson v. Lyon & Healy*, 243 Ill. 370, 377 (1909); see also *Wilcke v. Henrotin*, 241 Ill. 169, 172 (1909). The majority engages in an apples-to-oranges comparison that is untenable. The opinion's analysis and attempt to analogize the hypothetical to this case grossly misconstrue the statutory language, the facts and arguments, and, frankly, the whole point of this case.

¶ 34 The focus here is whether defendants may be sued for wrongful death and whether a death that results from an abortion is a wrongful death. I would answer both questions in the negative.

¶ 35    The certified question asks

"[w]hether section 2.2 of the Wrongful Death Act, 740 ILCS 180/2.2, bars a cause of action against a defendant for fetal death if the defendant knew or had a medical reason to know of the pregnancy and the alleged malpractice resulted in a non-viable fetus that died as a result of a lawful abortion with requisite consent."

¶ 36    The certified question implicates both the second and third paragraphs of section 2.2 and entangles the two provisions to create the conundrum presented. The resolution of the question ultimately turns on whether the second paragraph of section 2.2 imposes a categorical ban on wrongful death claims against physicians whenever a lawful abortion with requisite consent occurs.

¶ 37    In interpreting a statute, this court should look to the Act as a whole with the aim of ascertaining and giving effect to the intent of the legislature. *Orlak v. Loyola University Health System*, 228 Ill. 2d 1, 8 (2007) ("In determining the plain meaning of a statute's terms, we consider the statute in its entirety, keeping in mind the subject it addresses, and the apparent intent of the legislature in enacting the statute."). Where possible, a court will interpret the language of a statute according to its plain and ordinary meaning. *Id.* Where a statute is clear and unambiguous, this court will enforce the language as written and "will not read into it exceptions, conditions, or limitations not expressed by the legislature." *In re N.C.*, 2014 IL 116532, ¶ 50. Moreover, where a statute is in derogation of the common law, such as the Wrongful Death Act, it must be " 'strictly construed and nothing is to be read into such statutes by intendment or implication.' " *Williams v. Manchester*, 228 Ill. 2d 404, 419 (2008) (quoting *Summers v. Summers*, 40 Ill. 2d 338, 342 (1968)).

¶ 38    First, the court must determine whether the statute is clear and unambiguous. To do so, we must consider the stated language of section 2.2 as presented:

"The state of gestation or development of a human being when an injury is caused, when an injury takes effect, or at death, shall not foreclose maintenance of any cause of action under the law of this State arising from the death of a human being caused by wrongful act, neglect or default.

There shall be no cause of action against a physician or a medical institution for the wrongful death of a fetus caused by an abortion where the abortion was permitted by law and the requisite consent was lawfully given. Provided, however, that a cause of action is not prohibited where the fetus is live-born but subsequently dies.

There shall be no cause of action against a physician or a medical institution for the wrongful death of a fetus based on the alleged misconduct of the physician or medical institution where the defendant did not know and, under the applicable standard of good medical care, had no medical reason to know of the pregnancy of the mother of the fetus." 740 ILCS 180/2.2 (West 2018).

¶ 39    Reading each paragraph in isolation, each paragraph is clear and unambiguous. By its plain and ordinary language, the second paragraph imposes a categorical ban on wrongful death actions against *a* physician or medical institution where the wrongful death is caused by a lawful and consensual abortion. The third paragraph, however, bars a cause of action for the wrongful death of a fetus where a physician or medical institution did not know or, under the applicable standard of care, did not have a medical reason to know of the pregnancy without mentioning abortion. In determining how these paragraphs may coexist, we must look to the Act as a whole.

¶ 40    Section 1 of the Act indicates the Act was meant to serve as the source of the right to sue, whereas, under the common law, there was no such right. See *id.* § 1; see also *Williams*, 228 Ill. 2d at 418 ("At common law, a cause of action died concurrently with the death of the injured party, and there was no right of recovery after the injured person's death."). Section 1 states in relevant part:

"Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who or company or corporation which would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony." 740 ILCS 180/1 (West 2018).

- 12 -

¶ 41    This court has held the "legislature, having conferred a cause of action for wrongful death, has determined who shall sue and the conditions under which the suit may be brought." *Williams*, 228 Ill. 2d at 420. The Act is viewed as " 'creating the cause of action, which must be brought in the name of the representative, for the pecuniary losses which a surviving spouse and next of kin may have sustained by reason of the death of the injured person.' " *Id.* (quoting *Pasquale v. Speed Products Engineering*, 166 Ill. 2d 337, 360 (1995)). The Act itself creates a right of action where one did not otherwise exist.

¶ 42    Viewing the Act as a whole, it is evident the second and third paragraphs create independent limitations on the right to sue under the Act. Thus, we must also consider whether the third paragraph creates an additional unequivocal right to, and thus overcomes any bar on, wrongful death claims regardless of how a fetus died where a physician or medical institution knew or, under the applicable standard of care, had reason to know of a plaintiff's pregnancy.

¶ 43    Plaintiffs posit the third paragraph creates an additional cause of action. Plaintiffs rely on the legal maxim *exceptio probat regulam de rebus non exceptis*, which translates to "An exception proves a rule concerning things not excepted." Black's Law Dictionary 1960 (11th ed. 2019). This principle is useful when ascertaining the intent of the legislature where the intent is unclear from the statute's plain language. Such maxims, however, are applied only when they point to the intent of the legislature not otherwise ascertained. See generally *Bridgestone/Firestone, Inc. v. Aldridge*, 179 Ill. 2d 141, 153-54 (1997).

¶ 44    The Act itself creates a cause of action for wrongful death, subject to enumerated exceptions. One such exception is contained in the third paragraph of section 2.2. Plainly stated, the third paragraph serves as a limitation on the right created by the Act: there can be no claim for the wrongful death of a fetus against a physician or medical institution who did not know or, under the applicable standard of care, did not have medical reason to know of the pregnancy. 740 ILCS 180/2.2 (West 2018).

¶ 45    Plaintiffs allege defendants knew or, under the applicable standard of care, had medical reason to know of Thomas's pregnancy. Defendants neither dispute nor contest whether they knew or had medical reason to know of Thomas's pregnancy. Because the third paragraph expressly applies to situations where, under the

applicable standard of good medical care, a physician did not know or have medical reason to know of the pregnancy, I would therefore find the third paragraph to be inapplicable here where plaintiffs allege defendants did have a reason to know of the pregnancy. Under these facts, there is no need to determine the effect or meaning of plaintiffs' proposed inverse interpretation. Contrary to the majority's analysis, "[t]here is no rule of construction which allows the court to declare that the legislature did not mean what the plain language of the statute imports," "nor is it necessary for the court to search for any subtle or not readily apparent intention of the legislature." *People v. Woodard*, 175 Ill. 2d 435, 443 (1997). Therefore, we must read the third paragraph—like any other paragraph contained in the statute— as stated and not extend, annex, or substitute provisions to create another cause of action or broaden the scope of the statute. See *Belfield v. Coop*, 8 Ill. 2d 293, 307 (1956).

¶ 46     Finding the third paragraph to be inapplicable, I now turn to whether plaintiffs' claim should be barred pursuant to the second paragraph of section 2.2.

¶ 47     Defendants argue the second paragraph creates a categorical ban on wrongful death actions against physicians whenever an abortion occurs. In this respect, defendants contend that *Light v. Proctor Community Hospital*, 182 Ill. App. 3d 563 (1989), is on all fours with the instant case. In that case, the plaintiff underwent a thyroid scan, and at the time of the procedure, neither she nor the defendant doctor knew of her pregnancy. *Id.* at 564. The plaintiff subsequently learned of her pregnancy and, pursuant to the recommendation of a radiologist, terminated the pregnancy by way of abortion. *Id.* at 564-65. The plaintiff filed a negligence claim against the defendant for failure to determine her pregnancy prior to the scan and for "failure to warn her that she should not undergo the scan if she were pregnant." *Id.* at 565. The plaintiff subsequently filed an amended complaint wherein she brought a cause of action on behalf of the unborn fetus for wrongful death pursuant to the Act. *Id.* The defendant filed a motion to dismiss, and the trial court dismissed the counts brought under the Act. *Id.* On appeal, the appellate court affirmed. *Id.* at 566.

¶ 48     In support of her wrongful death claim, the plaintiff alleged the defendant's negligence was the proximate cause of her unborn fetus's death and that her decision to obtain an abortion was a foreseeable result of the defendant's

- 14 -

negligence. *Id.* at 565. The plaintiff further asserted section 2.2 of the Act was only intended to protect physicians performing abortions, not all physicians whose negligent acts lead to a wrongful death. *Id.* In a short opinion, the appellate court disagreed. The majority considers *Light* under the lens of whether the case considered legal or superseding cause and that its only significance is the contention that the Act is in derogation of the common law. The majority's contention is a gross misinterpretation. *Light* clearly found that, under section 2.2, "the unborn fetus may not maintain a separate cause of action against the same defendants and base it upon the same tortious acts which furnish the basis for the plaintiff's medical malpractice" claim. *Id.* at 566. The court reasoned that, while the scan "may have been a potential increase in risk to the well-being of the fetus," there was no injury and the abortion was what terminated the plaintiff's pregnancy. *Id.* The majority unnecessarily and incorrectly diminishes and overturns *Light* premised on its own misunderstanding of that case and the instant case.

¶ 49        Critically, in *Light*, neither fetal predeath injuries nor injuries independent of the plaintiff's negligence claim were alleged. Instead, the plaintiff alleged the wrongful death was caused by an abortion and the abortion was a foreseeable result of the defendant's malpractice. Moreover, an increased risk of harm as exhibited in *Light* is not a cognizable injury. *Williams*, 228 Ill. 2d at 425 ("[A]s a matter of law, an increased risk of future harm is an *element of damages* that can be recovered for a present injury—it is *not* the injury itself." (Emphases in original.)). The allegations in the instant case are different to the extent plaintiffs allege the wrongful death was caused by injuries resulting from defendants' wrongful acts, even though the death itself—not the wrongful death—was effectuated by abortion.

¶ 50        Plaintiffs then directed us to this court's decision in *Williams*, where the plaintiff sustained hip and pelvic fractures resulting from a motor vehicle accident. *Id.* at 407-08. At the time of the accident, the plaintiff was pregnant. *Id.* Upon examination, physicians informed the plaintiff " 'the baby was fine' " but her pregnancy posed obstacles to her own medical treatment. *Id.* at 408. Physicians provided the plaintiff with options regarding her own treatment, including pelvis surgery without the termination of pregnancy, termination of the pregnancy and post-termination surgery, and delayed surgery until the plaintiff was in her third trimester or after birth. *Id.* at 411. Although the plaintiff had a viable pregnancy that could have gone to term, she ultimately terminated the pregnancy by way of

lawful and consensual abortion. *Id.* at 412. The plaintiff then sought recovery for the death of her unborn fetus pursuant to the Act. *Id.* The circuit court entered summary judgment in favor of the defendant driver and dismissed the wrongful death claim. *Id.* at 414. The appellate court reversed, but this court vacated the appellate court's judgment and affirmed the circuit court's judgment. *Id.* at 427. This court's decision in *Williams* unequivocally undermines the majority's proposed hypothetical used to support its analysis. This court held:

> "[A] wrongful-death action is a statutory, independent cause of action that does not arise until after death. However, the action is derivative of the injury to the decedent and is grounded on the same wrongful act of defendant, whether it was prosecuted by the injured party during his lifetime or by a representative of the estate. The representative's right of action depends upon the existence, in the decedent, at the time of his or her death, of a right of action to recover for such injury." *Id.* at 426.

¶ 51    Defendants assert that *Williams*, although concerned with the Act, does not concern itself with the second paragraph of section 2.2, as the plaintiff there did not raise a claim against a physician or medical institution. *Williams* nonetheless provides guidance on interpreting the spirit of the Act and relevant provision: the decedent, had he or she survived, would have had a cause of action premised on a defendant's wrongful act. See *id.* at 422. *Williams* demonstrates the allegations of the complaint must fall within the prescribed requirements necessary to confer the right of action created by the legislature.

¶ 52    In this case, plaintiffs allege the negligence proximately caused irreversible injuries that, had the fetus lived, would have permitted an actionable claim. Consistent with our holding in *Williams*, where the alleged injury is not the death itself, the long-standing construction of the Act, from which the majority attempts to deviate, concerns itself with " 'whether an action could have been maintained by the child, for the injury, had he survived it.' " *Id.* at 424 (quoting *City of Chicago v. Major*, 18 Ill. 349, 356 (1857)). It is not a matter of whether the fetus had lived or died but whether the fetus, had he survived the injury, would have had a cause of action for the injury that caused his death. What appears to be the source of confusion is the interpretation of "death" and its ability to trigger a "wrongful death" action, not "superseding cause."

¶ 53    Wrongful death requires fatal injury, not merely a standalone injury and standalone death. See *Chrisafogeorgis v. Brandenberg*, 55 Ill. 2d 368, 374 (1973) ("[A] right of action arose from fatal injuries to such a child."). In *Dralle v. Ruder*, 124 Ill. 2d 61, 68-69 (1988), this court held that, while in a previous case, a parent may recover damages for a loss of a child's society in a wrongful death action, a parent cannot recover for that same loss resulting from nonfatal injuries. *Dralle* reasoned that, when a child is not fatally injured, there is no danger that the injury caused will go uncompensated, like it would at common law. See *id.* at 69. The primary distinction is that, in a wrongful death, the remedy is afforded to the surviving family members, whereas in a nonfatal injury case, the injured victim retains his own cause of action against the tortfeasor. *Id.*

¶ 54    The majority plainly ignores the structure of a wrongful death action. Nonfatal injuries that lead to the decision to abort do not trigger a wrongful death action. Surely it is a death, but not a "wrongful" death as defined by the Act. Contrary to the majority's analysis, the death here was an effect of the abortion, not the alleged irreversible injuries stemming from the elective surgeries. Moreover, a lawful and consensual abortion itself cannot be said to have been an actionable injury to the fetus under the Act. Instead, plaintiffs fail to allege the negligence caused the death; rather, "Defendants' actions resulted in injury to Baby Doe which was irreversible and led to the need for the termination of the pregnancy." Similar to *Williams*, I would decline to follow plaintiffs' argument and the majority's implication that an undiscernible injury required the abortion. While the fetus may have had an actionable injury against defendants had he survived the injury, there is no way of telling whether the fetus would or would not have survived the injuries, if any, because plaintiffs opted to undergo a lawful and consensual abortion. A party cannot recover under wrongful death solely because they chose to effectuate the death necessary to trigger a wrongful death action. While an abortion may cause the death of an unborn fetus, the Act requires the death to be a result of a wrongful act.

¶ 55    Because a lawful abortion with requisite consent is not a wrongful act, a death that results from an abortion is indeed a death, but not a wrongful death. For example, if a driver is injured—whiplash, cuts, and scrapes—in a rear-end motor vehicle accident, a tortfeasor could be liable for negligence. If, as a result of that same motor vehicle accident, the driver bleeds out from his wounds and dies, the

tortfeasor could be liable for wrongful death. If the driver sustains head trauma and dies months later from that trauma, the tortfeasor could likewise be liable for wrongful death. If, however, while in the hospital with head trauma and a good prognosis, a relative terminates the driver's medical care to effectuate the driver's death in order to pursue a wrongful death action, the tortfeasor is unlikely to be liable for the wrongful death because, although deceased, the tortfeasor's wrongful act did not cause the death. Sure, the tortfeasor's act may have put the driver in the hospital, but the act did not effectuate the death. A wrongful death requires the death in question to be proximately caused by the wrongful act. While I agree with the majority that the legislature did not expressly state "superseding cause," I nonetheless emphasize that the legislature did expressly state that a death be "caused by" an abortion for section 2.2 to apply.

¶ 56        *Light* and *Williams* are examples of what the Act clearly prohibits: causes of action for wrongful deaths caused by a lawful abortion performed with requisite consent. Indeed, as defendants assert, had the legislature intended to permit a cause of action for the wrongful death of a fetus where the alleged negligence proximately caused the abortion it would have done so explicitly. The Act itself is clear the decedent must have been able to maintain an independent cause of action had the death not intervened. Had the fetus been born alive and not succumbed to the injuries caused by a defendant's wrongful act(s), the fetus would have had an actionable injury for which to recover. Instead, the fetus here did not succumb to the injuries caused by defendant's wrongful act(s) but rather plaintiff's choice to exercise her right to a lawful and consensual abortion. In *Light*, though the plaintiff alleged medical negligence that *may* have produced an increased risk of harm to the fetus, there is no indication the plaintiff alleged the fetus sustained fatal injuries or died as a result of something other than the abortion (*e.g.*, radiation exposure) itself. Likewise, in *Williams*, though the plaintiff alleged the driver's negligence led to the plaintiff's need for treatment for which her pregnancy posed an obstacle, the plaintiff did not allege the fetus died as a result of something other than an abortion, as the facts definitively indicated the fetus suffered no cognizable injury as a result of the motor vehicle accident.

¶ 57        The second paragraph of the statute expressly limits the right to recover for the *wrongful* death of a fetus caused by an abortion. In construing "wrongful death of a fetus caused by an abortion" where the abortion was lawful and consensual, I

understand the statutory language to mean just that: a wrongful death caused by an abortion. To ignore or depart from such critical language would be to ignore legislative intent. See *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 83 (1994) (stating a court is not at liberty to depart from the plain language and meaning of the statute by reading into it what the legislature did not express). Here, the majority does just that.

¶ 58    Even if there was any doubt as to what our lawmakers intended, the legislative transcripts make clear the provision "assures that in a wrongful death action that one cannot be brought on behalf of an aborted fetus when the abortion was lawful and when it was lawfully performed by a doctor." 81st Ill. Gen. Assem., House Proceedings, June 21, 1979, at 131 (statements of Representative Cullerton).

¶ 59    Citing only one instance of Senator Rhoads's commentary, the majority cherry-picks statements without context and without concern for the long-standing legislative history of the bill and its amendments, the historical context, or the progeny of United States Supreme Court cases that led to the change in this law.

¶ 60    Contrary to the majority's contention, Senator Rhoads tirelessly reiterated that abortion was not a wrongful death. 81st Ill. Gen. Assem., Senate Proceedings, May 17, 1979, at 166 (statements of Senator Rhoads). Nor could an abortion be a *wrongful* death, as the act of obtaining a lawful abortion with requisite consent is not a *wrongful* act. In further elaborating, Senator Knupple stated,

> "It's a very…very simple example. If the woman was three months pregnant she could still have an abortion under the Federal cases and even if she participated in that abortion, she'd be under the Wrongful…Death Statute in Illinois foreclosed from recovering because she would have participated in whatever happened ***." *Id.* at 169 (statements of Senator Knupple).

¶ 61    Moreover, while it seems counterintuitive, or in the majority's view nonsensical, that the legislature would only limit wrongful death in this context but not in contexts related to motor vehicle accidents, Senator Knupple went on to explain, "but if she's involved in an auto collision and she doesn't want an abortion and that child is important to her *** and then she's involved in an automobile accident and as a result she inadvertently aborts and it's somebody else's fault, she can recover for it." *Id.* at 169-70. The legislature was very clear, precise, and

meticulous in determining whom and what contexts to exclude from the Act, especially when operating under the constraints of the then-new *Roe* line of cases. See *Roe v. Wade*, 410 U.S. 113 (1973). By offering protections to physicians and medical institutions, our lawmakers intended to protect a woman's right to an abortion even if that meant limiting a right to recover for wrongful death, albeit a right unavailable under the common law.

¶ 62     The logic is rather simple and not as convoluted as the majority makes it appear. A wrongful death requires a wrongful act. A lawful abortion with requisite consent cannot be a wrongful death because the act of obtaining a lawful and consensual abortion is not a wrongful act; it is a lawful act effectuating the lawful death of a fetus. While plaintiffs argue this construction may lead to absurd results and the majority agrees, our legislature thought it to *prevent* absurd results. Looking at the legislative history we can clearly see these provisions were meant to fill in the gaps and protect a woman's right to make her own decisions about reproductive health and comport with *Roe*. This was also meant to protect physicians so as to not, in some roundabout way, deter or criminalize a physician for performing or participating in an abortion.

> "The [Act] itself makes a wrongful death action possible for a fetus that is wrongfully killed and the point of the Amendment is only to say that that [Act] *should not be understood to include fetus[es] who are killed as a result of a lawfully performed abortion*. It's really a technical Amendment that makes it clear that the intent of the [Act] is not to do anything that's contrary to the legal standing of lawfully performed abortions.
>
> * * *
>
> *** [W]e've a responsibility to make it quite clear that this [Act] is not intended to undercut the current federal case law *** with respect to lawfully performed abortions." (Emphasis added.) 81st Ill. Gen. Assem., House Proceedings, June 15, 1979, at 36-37 (statements of Representative Currie).

¶ 63 The legislature was clear that its intention behind the subject provisions was to consolidate Illinois case law and comport with the United States Supreme Court's decision in *Roe*.[1]

¶ 64 The majority improperly holds section 2.2 only applies to the physician performing the abortion. The majority's contention is unequivocally incorrect and wholly rebutted by the legislative history. While the majority relies on Senator Rhoads's statements to support its position, it deliberately ignores and turns a blind eye to Senator Rhoads's commentary that completely and expressly undermines the majority's assertion: "This is not an abortion bill. It *** *isn't aimed at a doctor who lawfully performs an abortion ***.*" (Emphasis added.) 81st Ill. Gen. Assem., Senate Proceedings, May 17, 1979, at 170 (statements of Senator Rhoads). The statute, although it concerns abortion, is not an abortion statute. It merely provides an exclusion to the Wrongful Death Act.

¶ 65 Even if I were to interpret the statute to mean that the referenced physician is the physician performing the abortion in clear contravention of our lawmakers' statements, there could still be no cause of action for wrongful death when a lawful abortion with requisite consent occurs. The legislature was clear, in consolidating this court's precedent, that a lawful and consensual abortion is not a wrongful death. Nor could it be, because in an effort to protect a woman's right to make reproductive health decisions under the *Roe* line of cases, the legislature could not promulgate laws that interfered or could interfere with abortion. In a difficult balancing act, the legislature chose to limit recovery in wrongful death actions in favor of access to abortion. While the majority is focused on recovering for wrongful death in the instant context, this court dealt with, and our lawmakers foresaw, other issues such as women undergoing lawful and consensual abortions only to have the mothers and doctors be sued by a spouse, coparent, or other relative for the abortion death

---

[1]*Chrisafogeorgis*, 55 Ill. 2d 368 (holding a wrongful death action exists for the death of a child stillborn after his mother was injured), is an example of the case law that promulgated the relevant statutory language, including the limited exception in the second paragraph, which states

"[t]here shall be no cause of action against a physician or a medical institution for the wrongful death of a fetus caused by an abortion where the abortion was permitted by law and the requisite consent was lawfully given. *Provided, however, that a cause of action is not prohibited where the fetus is live-born but subsequently dies.*" (Emphasis added.) (740 ILCS 180/2.2 (West 2018)).

of the unborn fetus. The primary purpose here was to ensure physicians, regardless of whether they were the ones performing the abortion, would not be held liable or be deterred in any way from performing abortions, recommending abortions, or participating in abortions out of fear of liability at a time when abortion was such a sensitive topic. See *People v. Greer*, 79 Ill. 2d 103, 115 (1980) (noting the intentional performance of an abortion of a viable fetus was a Class 2 felony even if the abortion itself killed the fetus).

¶ 66    Finally, regarding causation, whether a wrongful death was actually caused by an act other than an abortion is an inquiry into proximate cause and a question for the trier of fact, not this court. See *Peach v. McGovern*, 2019 IL 123156, ¶ 53. In ruling on a motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2018)), however, this court takes the allegations as true to determine whether, as pled, plaintiffs' cause of action may proceed. *Skaperdas v. Country Casualty Insurance Co.*, 2015 IL 117021, ¶ 44. Plaintiffs allege that the fetus sustained irreversible injuries caused by defendants' medical misconduct and, as a result of those injuries, plaintiff made the decision to terminate the pregnancy. Having no other allegations that even remotely suggest the alleged wrongful death of Baby Doe was caused by something other than a lawful and consensual abortion, I find the allegations insufficient and would therefore find the second paragraph bars plaintiffs' claims as alleged under the Act.

¶ 67    While a truly unfortunate case, our legislature did not leave us without remedy. Senator Rhoads made clear that, while a wrongful death action cannot be pursued under the statute, this does not preclude a plaintiff from recovering under other claims. 81st Ill. Gen. Assem., Senate Proceedings, June 28, 1979, at 53 (statements of Senator Rhoads) ("Now, you certainly can still go after them under malpractice or negligence or any of those types of cause of action."). Here, plaintiff brought a multicount complaint. Although the wrongful death count was dismissed, other claims remain viable. Nonetheless, this matter is a rather straightforward issue of statutory interpretation. The certified question ultimately turns on whether the second paragraph serves as a categorical ban on wrongful death actions against physicians when a plaintiff chooses to undergo a lawful and consensual abortion. In my view, it does.

¶ 68        The majority erred in its analysis, application, and overall interpretation of the facts and law in this case. Ultimately, I would answer the question in the affirmative and remand the cause to the circuit court for further proceedings on the remaining counts. Thus, based on the foregoing reasons I cannot join the majority opinion and, therefore, respectfully dissent.

¶ 69        JUSTICE MICHAEL J. BURKE joins in this dissent.